UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LESTER M. BENFORD,

                 Petitioner,                          Case No. 18-13113

v.                                           HON. MARK A. GOLDSMITH

SHERRY L. BURT,

                 Respondent.

_____/

## OPINION & ORDER
## (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY, AND (3) GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Michigan prisoner Lester M. Benford filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1). Petitioner challenges his second-degree murder conviction. The petition raises six claims for relief. For the reasons explained below, the Court denies the petition. The Court denies a certificate of appealability and grants Petitioner leave to proceed in forma pauperis on appeal.

## I. BACKGROUND

The charges against Petitioner arose from the fatal shooting of Delrico Taylor in September 2011. Petitioner was tried with co-defendant Rodney Kennard in Michigan's Wayne County Circuit Court. The Michigan Court of Appeals summarized the testimony leading to Petitioner's conviction as follows:

The victim's body was discovered during the early morning hours of September 12, 2011, in the garage of a vacant home in Detroit. The body had been badly burned. An odor of gasoline was detected when the body was moved. Bullets removed from the victim's body and shell casings found near the scene indicated that two firearms were involved in the shooting.

Earlier in the evening, the victim was at a nearby home with his longtime friend, Locaster Croskey. The victim flagged down defendants Benford and Kennard, who had known the victim for many years. A few months before the shooting, the victim had stabbed defendant Benford, causing him to seek medical treatment. As the men entered Croskey's home, defendant Benford threatened to shoot a small dog that was barking at him. Eventually, the victim left Croskey's home with defendants and Antowan Stitts to go to a liquor store.

Defendants and Stitts were charged with the victim's murder, but Stitts pleaded guilty to accessory after the fact, [Mich. Comp. L. §] 750.505, pursuant to a plea agreement. At trial, he testified that the men were walking when he heard a clicking sound. According to Stitts, defendant Benford tried to shoot the victim, but Benford's gun, described by Stitts as a .380, jammed. The victim and defendant Benford then struggled over the gun, which discharged, striking defendant Benford in the hands. The victim fled, but defendant Kennard chased him down and struck him. The victim fell to the ground, bleeding and unconscious. The victim was taken to the garage, after which defendant Kennard retrieved a .22 rifle and shot the victim three times. Defendant Benford left to seek treatment at a hospital. Stitts gave defendant Kennard his gas can, and defendant Kennard set the victim on fire.

A neighbor, Michael Pokladek, heard a loud sound and went outside where he saw four men. It appeared that three of the men were fighting one man. One of the taller men pulled a black Glock handgun and fired a shot at the victim. Pokladek did not want to get involved and went into his house where he heard additional shots fired.

Tanise Page lived with her children, Howard Grandberry, and her cousin Ericka Williams, who was defendant Kennard's girlfriend. On September 12, 2011, defendant Kennard entered [Page's] home with Stitts and an unknown male. They went into the bathroom and washed up for 20 minutes. Later that day, individuals came to the home looking for defendant Kennard. Within three days of the offense, Page's home was firebombed. She went to the police and attributed the arson to retaliation against defendant Kennard.

2

In December 2011, Page heard defendant Kennard tell someone that what happened to the victim could happen to them, which she interpreted as bragging.

Nakisha Jenkins, the mother of the victim's child, was also a close friend of defendant Benford.  Defendant Benford told Jenkins that he was walking with the victim when two men jumped out of a car with guns and attacked them.  Defendant Benford was shot in the hands.  However, defendant Benford told a police officer at the hospital that he was injured when the victim tried to shoot him and the two men struggled over the gun.

Defendants presented evidence that Stitts either denied or minimized his role to the police and his probation officer, but told other inmates that he committed the murder.  Additionally, on cross-examination, Stitts admitted that he avoided life imprisonment by entering into the plea agreement and now faced a maximum penalty of a five-year prison term for the charge of accessory after the fact.  Defendant Kennard's girlfriend, Ericka Williams, offered an alibi that she saw defendant Kennard at her home shortly after she heard gunshots.

People v. Benford, No. 319301, 2015 WL 6438144, at *1–*2 (Mich. Ct. App. Oct. 22, 2015).

On October 21, 2013, Petitioner was convicted of second-degree murder, Mich. Comp. L. § 750.317.  Id. at *1.  He was acquitted of first-degree premediated murder, Mich. Comp. L. § 750.316(1)(a); felon in possession of a firearm, Mich. Comp. L. § 750.224f; and possession of a firearm during the commission of a felony, Mich. Comp. L. § 750.227b. Id. at *1, n.1.  Petitioner was sentenced to 38 to 60 years' imprisonment.  Id. at *1.

Petitioner filed an appeal of right in the Michigan Court of Appeals.  He raised the following claims through counsel and in a pro se supplemental brief: (i) "other acts" evidence was improperly admitted; (ii) the prosecutor committed misconduct, and Petitioner's counsel was ineffective for failing to object; (iii) the trial court's evidentiary

3

rulings, failure to control the presentation and sequestration of witnesses, and improper jury instructions denied Petitioner his right to a fair trial; and (iv) Petitioner's trial counsel was ineffective.  Id. at *2–*8.

The Michigan Court of Appeals consolidated Petitioner's appeal with that of co-defendant Kennard's and affirmed their convictions and sentences.  Id. at *1.  Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims that he raised before the Michigan Court of Appeals except for the prosecutorial misconduct claim.  The Michigan Supreme Court denied leave to appeal.  People v. Benford, 878 N.W.2d 858 (Mich. 2016).

After his direct appeal, Petitioner returned to state court to file a motion for relief from judgment.  He argued that (i) the prosecutor committed misconduct; (ii) the trial court used an improper self-defense instruction; (iii) the Michigan Supreme Court's decision in People v. Lockridge, 870 N.W.2d 502 (Mich. 2015) warranted resentencing; and (iv) he received ineffective assistance of trial and appellate counsel.  The trial court denied the motion with respect to all claims except Petitioner's sentencing claim.  People v. Benford, No. 13-001867 (Wayne Cnty. Cir. Ct. March 23, 2017) (Dkt. 9-30).  The trial court dismissed the sentencing claim without prejudice and appointed counsel to assist Petitioner.  Id.  Appointed counsel filed a motion for resentencing in light of Lockridge. Following a hearing, the trial court concluded that it would not have imposed a materially different sentence had the guidelines been advisory rather than mandatory, and it denied the motion.  6/1/17 Mot. Tr. (Dkt. 9-33); 6/1/17 Order (Dkt. 9-34).  The Michigan Court

4

of Appeals denied Petitioner's application for leave to appeal the trial court's denial of his motion for relief from judgment.  People v. Benford, No. 338987 (Mich. Ct. App. Aug. 31, 2017).  The Michigan Supreme Court also denied leave to appeal.  People v. Benford, 917 N.W.2d 62 (Mich. 2018).

Petitioner then filed this habeas petition (Dkt. 1).  He seeks habeas relief on the following six grounds.  First, he was denied his rights to a fair trial and due process when the prosecutor bolstered and vouched for the credibility of its witness Antowan Stitts, thereby having a grave impact on the verdict.  Pet. at 16–19.  Second, Petitioner's trial counsel was ineffective when his trial counsel (i) failed to object to the admission—in violation of United States v. Bruton—of a non-testifying co-defendant's statement, and (ii) failed to file a motion to severe Petitioner's case from co-defendant Kennard's case based on an antagonistic defense.  Id. at 20.  Third, the prosecutor used Petitioner's pre-arrest silence as substantive evidence of guilt, in violation of the Fifth Amendment.  Id. at 25. Fourth, the trial court failed to instruct the jury on self-defense when evidence supported the instruction.  Id. at 29–31.  Fifth, Petitioner is entitled to re-sentencing when his conviction is based on judicial fact-finding.  Id. at 32.  Sixth, Petitioner's appellate counsel was ineffective when his appellate counsel failed to present the five preceding issues, which are meritorious and obvious, on Petitioner's appeal of right.  Id. at 37–38.

Respondent filed an answer to the petition that maintains that Petitioner's first, third, and fourth claims are procedurally defaulted and that all of Petitioner's claims are meritless (Dkt. 8).  Petitioner filed a reply (Dkt. 12).

Under the doctrine of procedural default, a federal court generally may not review federal claims that a habeas petitioner has defaulted in state court "pursuant to an independent and adequate state procedural rule."  Coleman v. Thompson, 501 U.S. 722, 750 (1991).  The procedural default doctrine is not jurisdictional, and the Court may bypass this question when proceeding directly to the merits is more efficient.  Lambrix v. Singletary, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [merits] question priority . . . if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law.").  The Court will proceed to the merits of Petitioner's claims without deciding the procedural default issue.

## II.  STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases."  Shoop v. Hill, 139 S. Ct. 504, 506 (2019).  A federal court may grant habeas corpus relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  Williams v. Taylor, 529 U.S. 362, 405–406 (2000).

6

An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. To obtain habeas relief in federal court, a state prisoner must show that the state-court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

A state court's factual determinations are presumed to be correct on federal habeas review. See 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. Id. For claims that were adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

## III. DISCUSSION

### A. Habeas Petition

The Court addresses each of Petitioner's six claims for relief in turn.

### 1. Prosecutorial Misconduct

Petitioner's first claim concerns the prosecutor's closing argument. He argues that the prosecutor improperly (i) informed the jury of her reasons for offering a plea bargain to Antowan Stitts but not to Petitioner or to co-defendant Kennard and (ii) vouched for Stitts's credibility.

A prosecutor's misconduct violates a criminal defendant's constitutional rights if it "so infected the trial with unfairness as to make the resulting conviction a denial of due

process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (punctuation modified). Prosecutorial misconduct entails much more than conduct that is "undesirable or even universally condemned." Id. (punctuation modified).   To constitute a due process violation, the conduct must have been "so egregious so as to render the entire trial fundamentally unfair." Cook v. Bordenkircher, 602 F.2d 117, 119 (6th Cir. 1979).   In making this determination, the "first question" is whether the prosecutor's comments were improper. Stermer v. Warren, 959 F.3d 704, 725 (6th Cir. 2020).

Petitioner challenges the prosecutor's discussion of Stitts's plea agreement and Stitt's testimony during closing argument.   The prosecutor elicited testimony on direct examination of Stitts that he had been charged with first-degree murder for the killing of Delrico Taylor, felon in possession of a firearm, and possession of a firearm during the commission of a felony.  9/26/13 Jury Trial Tr. at PageID.2019 (Dkt. 9-17).  Stitts testified that he pleaded guilty to accessory after the fact, Mich. Comp. L. § 750.505, pursuant to a plea agreement that provided for the dismissal of the other charges and a sentence within the guidelines. Id. The agreement was contingent upon Stitts providing truthful testimony about what happened on the night of the shooting.   Id. at PageID.2020.   On cross-examination, Stitts testified that, had he been convicted of first-degree murder, he would have faced a mandatory sentence of life imprisonment without parole and that, even if he were acquitted of the first-degree murder charge but convicted of being a felon in possession of a fireman, he faced the possibility of a life sentence based upon his status as

8

a fourth habitual offender.  Id. at PageID.2060.  By pleading guilty to being an accessory after the fact, Stitts faced a maximum five-year sentence.  Id. at PageID.2061.

In closing argument, the prosecutor explained to the jury that a prosecutor does not get to select her witnesses from "Central Casting."  10/15/13 Jury Trial Tr. at PageID.2801 (Dkt. 9-22).  She stated that, instead, the prosecutor must accept the witnesses available in any given case.  Id.  The prosecutor told the jury that it is not her job to decide a witness's credibility, but she "can decide that [she's] going to cut a deal with X, Y, and Z."  Id. at PageID.2802.  She explained that the prosecutor's office attempts to "cut a deal with the least culpable person" and that the evidence presented from other sources was consistent with Stitts's version of events.  Id. at PageID.2803.

On plain error review, the Michigan Court of Appeals determined that the prosecutor's argument was not plain error.[1]  The court explained in relevant part:

> In closing argument, the prosecutor showed various exhibits to the jury and argued how the photographs corroborated the testimony of the witnesses. When discussing certain photographs, the prosecutor raised the issue of Stitts's credibility.  She explained that the evidence conflicted regarding Stitts's participation in the offense and that the credibility of his testimony presented an issue for resolution by the jury.  She also noted that the testimony of the neighbor and Page, as well as the photographs, corroborated Stitts's testimony, which served as the basis for offering him a plea deal.
>
> It was the defense theory throughout trial that Stitts was lying and had falsely accused the defendants to minimize his involvement in the crimes. Defendants elicited that Stitts sought to avoid serving life imprisonment, and that his plea deal was for a maximum prison term of five years.  The prosecutor was entitled to respond to this theory in closing argument.  The

---

[1] AEDPA's deferential standard of review applies to a state court's plain-error analysis of a defaulted claim.  Stewart v. Trierweiler, 867 F.3d 633, 638 (6th Cir. 2017).

prosecutor was also entitled to comment on the effect of the promises that were made to obtain Stitts's testimony. The prosecutor outlined the evidence and why those facts supported the plea deal. Specifically, she stated that Pokladek had testified that the taller man was the shooter, which was consistent with the evidence offered by Stitts. However, the prosecutor also noted that there was support for the contention that Stitts was a participant in the plan to kill the victim. Nonetheless, the prosecutor properly advised the jury that the credibility of his testimony was for the jury to decide. The prosecutor's argument did not constitute unsworn testimony and did not impermissibly vouch for the credibility of Stitts. Simply put, the prosecutor did not engage in misconduct by acknowledging the plea deal and the facts of the case that gave rise to the plea deal of the least culpable individual, and by acknowledging that the ultimate assessment of Stitts's credibility was for the jury to resolve. Accordingly, the prosecutor's argument was not plain error.

Furthermore, the trial court instructed the jury that the arguments of counsel were not evidence, and that it must decide which witnesses to believe. In addition, the court instructed the jury specifically with regard to Stitts's testimony that it should "examine [his] testimony closely and be very careful about accepting it," including whether his plea agreement with the prosecutor and his avoidance of a possible penalty of life imprisonment in exchange for his testimony affected his credibility or demonstrated his bias or self-interest. Jurors are presumed to follow the court's instructions. People v. Graves, 458 Mich. 476, 486; 581 NW2d 229 (1998). The trial court's instructions were sufficient to protect defendant Benford's substantial rights.

Benford, 2015 WL 6438144, at *3–*4.

The Michigan Court of Appeals' decision is not contrary to or an unreasonable application of clearly established federal law. The Darden standard "is a very general one, leaving courts more leeway . . . in reaching outcomes in case-by-case determinations." Parker v. Matthews, 567 U.S. 37, 48 (2012) (punctuation modified). "That leeway increases in assessing a state court's ruling under AEDPA," because the court "cannot set aside a state court's conclusion on a prosecutorial-misconduct claim unless a petitioner

cites . . . other Supreme Court precedent that shows the state court's determination in a particular factual context was unreasonable." Stewart v. Trierweiler, 867 F.3d 633, 638 (6th Cir. 2017) (punctuation modified).

Prosecutors "cannot inject their personal opinions into the case, particularly . . . as to the credibility of witnesses." Stermer, 959 F.3d at 725; see also Hodge v. Hurley, 426 F.3d 368, 378 (6th Cir. 2005) ("It is patently improper for a prosecutor either to comment on the credibility of a witness or to express a personal belief that a particular witness is lying."). While a prosecutor is prohibited from vouching for the credibility of witnesses, a prosecutor "may argue that the jury should arrive at a particular conclusion based on the evidence." United States v. Reid, 625 F.3d 977, 985 (6th Cir. 2010).

Here, much of the prosecutor's relevant argument was based on the evidence. The prosecutor was free to argue that other witnesses' testimony and the physical evidence were consistent with and therefore bolstered Stitts's testimony. A prosecutor is permitted to reference a plea agreement's requirement that the witness testify truthfully in order to receive the benefit of the plea. See United States v. Trujillo, 376 F.3d 593, 608–09 (6th Cir.2004) ("[T]he prosecutor did not offer any personal observations or opinions as to the veracity of [the witnesses], nor did she place the prestige of the Government behind their credibility. Rather, the prosecutor's questions and comments merely encompassed the terms of [the witnesses'] plea agreements . . . ."). The prosecutor's argument, considered as a whole, explained that the plea agreement offer was based on the evidence, not her personal belief, and that it was the jury's decision whether to believe Stitts.

11

Moreover, the trial court instructed the jurors at the beginning of the case, see 9/18/13 Jury Trial Tr. at PageID.968–969 (Dkt. 9-12) and at the close of the case, see 10/15/13 Jury Trial Tr. at  PageID.2898, 2909–2911, that the attorneys' statements and arguments were not evidence.  The court cautioned the jurors to base their verdict only on the properly admitted evidence.  A trial court can correct improprieties in a prosecutor's closing argument "by instructing the jury that closing arguments are not evidence." United States v. Crosgrove, 637 F.3d 646, 664 (6th Cir. 2011).  Therefore, even assuming the prosecutor's comments were improper, they did not render the trial fundamentally unfair.

## 2. Ineffective Assistance of Trial Counsel

In his second claim, Petitioner argues that admission of co-defendant Kennard's police statement violated Bruton v. United States, 391 U.S. 123 (1968) and that defense counsel was ineffective in failing to object to the admission.  Relatedly, he claims that counsel was ineffective for failing to move to sever Petitioner's trial from Kennard's.

An ineffective assistance of counsel claim has two parts.  A petitioner must show (i) that counsel's performance was deficient and (ii) that the deficiency prejudiced the defense.  See Strickland v. Washington, 466 U.S. 668, 687 (1984).  Because the Michigan Court of Appeals adjudicated Petitioner's ineffective assistance of counsel claims on the merits, AEDPA's deferential standard of review applies to these claims.  Under AEDPA, the question for this Court "is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington v. Richter, 562 U.S. 86, 105 (2011). The Michigan Court of Appeals' decision that counsel was not

12

ineffective was not contrary to or an unreasonable application of Supreme Court precedent.

The Court first discusses the admission of co-defendant Kennard's statement and then discusses severance.

### a. Co-Defendant Kennard's Statement

A few days after the shooting, Kennard gave a statement to the police. He said that he was with Petitioner, Stitts, and the victim about an hour before the shooting. 9/27/13 Jury Trial Tr. at PageID.2203–2204 (Dkt. 9-18). He heard Petitioner and the victim discuss an incident in which the victim stabbed Petitioner. Id. Kennard broke off from the group, leaving Petitioner and the victim together. Id. at PageID.2204. At around 12:45 a.m., Kennard was at his girlfriend's house when he heard gunshots. Id. About fifteen minutes later, Petitioner came to the side door and told Kennard he had been shot. Id. Kennard did not offer Petitioner assistance; instead, he told Petitioner to move on. Id. Petitioner maintains that defense counsel was ineffective for failing to object on the ground that the admission of Kennard's statement violated Petitioner's Sixth Amendment right to confrontation.

In Bruton v. United States, 391 U.S. 123 (1968), the United States Supreme Court held that a defendant's Sixth Amendment right to confrontation is violated if the incriminating statement of a non-testifying codefendant is introduced at the defendants' joint trial, even with an instruction that the statement be used only against the non-testifying codefendant. Id. at 126. The Court reasoned that, under such circumstances,

"the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." Id. at 135.

In Richardson v. Marsh, 481 U.S. 200 (1987), the Supreme Court discussed the applicability of Bruton to a non-testifying co-defendant's statement that was not facially incriminating to the defendant. The Court noted that Bruton involved a codefendant's confession that "expressly implicat[ed]" the defendant as his accomplice. Id. at 208 (quoting Bruton, 391 U.S. at 124 n.1). In Marsh, however, the "confession was not incriminating on its face, and became so only when linked with evidence introduced later at trial." Id. The Court held that when a confession involves "inferential incrimination," rather than facial incrimination, Bruton's "narrow exception" to the "almost invariable assumption . . . that jurors follow their instructions" is inapplicable. Id. at 206–207.

The Michigan Court of Appeals found no Bruton violation because Kennard's statement did not expressly incriminate Petitioner. Benford, 2015 WL 6438144, at *7. Kennard's statement was also consistent with Petitioner's statement that he gave to a police officer at the hospital and that was admitted against Petitioner at trial. Id. The Michigan Court of Appeals also held that because Kennard did not claim to have any knowledge about what happened to the victim and because his statement was consistent with Petitioner's, "it was not objectively unreasonable for defense counsel to decline to object to the admission of defendant Kennard's statement at their joint trial." Id.

14

The Michigan Court of Appeals applied the correct Supreme Court precedent,

<u>Bruton</u>, <u>Richardson</u>, and <u>Strickland</u>, in reaching its decision.[2]  The jury was clearly

instructed that Kennard's statement was to be considered only against Kennard.  In

addition, the Michigan Court of Appeals' holding that the statement was not facially

incriminating is supported by the record.  In light of these considerations, the Michigan

Court of Appeals' decision that counsel was not ineffective was not contrary to or an

unreasonable application of clearly established federal law.

**b. Motion to Sever**

Petitioner next argues that his attorney was ineffective by failing to move to sever

his trial from Kennard's or to move for a separate jury.  The Michigan Court of Appeals

held that counsel's decision not to move for separate trials was not an unreasonable trial

strategy and did not prejudice Petitioner.  The state court reasoned:

> Defendant Benford also contends that trial counsel was ineffective for
> failing to move for separate trials.  He argues that he was prejudiced by the
> joint trial because defendant Kennard's counsel explored defendant
> Benford's motive to harm the victim in light of the prior stabbing incident
> that occurred between them.  "Severance is mandated under MCR 6.121(C)
> only when a defendant provides the court with a supporting affidavit, or
> makes an offer of proof, that clearly, affirmatively, and fully demonstrates
> that his substantial rights will be prejudiced and that severance is the
> necessary means of rectifying the potential prejudice." <u>People v. Hana</u>, 447
> Mich. 325, 346; 524 NW2d 682 (1994).  To warrant severance, the
> defenses must be mutually exclusive or irreconcilable.  <u>Id.</u> at 349.
> Incidental spillover prejudice is generally inevitable and insufficient to

---

[2] The Michigan Court of Appeals did not specifically cite <u>Richardson</u>, but it relied upon
<u>People v. Etheridge</u>, 492 NW2d 490 (Mich. 1992), which applied the <u>Bruton</u> and
<u>Richardson</u> standards.  <u>Benford</u>, 2015 WL 6438144, at *7.  The court also did not cite
<u>Strickland</u>, but it applied the <u>Strickland</u> standard.  <u>Id.</u>

warrant severance.  Id.  Rather, the tension between the defenses must cause a jury to believe one defendant at the expense of another.  Id.

The fact that defendant Kennard acknowledged the prior incident between the victim and defendant Benford does not rise to the level of mutually exclusive or irreconcilable defenses.  The prosecution similarly argued that the prior stabbing incident established a motive for defendant Benford to harm the victim.  The prosecution would have been able to argue that motive at either a joint or separate trial.  At trial, defendant Kennard offered his girlfriend, Williams, as an alibi witness.  Defendant Kennard's alibi defense did not require the jury to believe one defendant at the expense of the other.  Therefore, defense counsel was not ineffective for failing to move for separate trials.  Any motion would have been futile.

Benford, 2015 WL 6438144, at *8.

The state court's decision is consistent with controlling federal law.  On habeas review, the Court must ask whether the failure to sever the trials impinged on the petitioner's right to due process of law.  Davis v. Coyle, 475 F.3d 761, 777 (6th Cir. 2007).  To establish a due process violation, Petitioner must show that the joint trial "'result[ed] in prejudice so great as to deny [Petitioner his] . . . right to a fair trial.'"  Id. (quoting United States v. Lane, 474 U.S. 438, 446 n. 8 (1986)).

Severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  Stanford v. Parker, 266 F.3d 458–459 (6th Cir. 2001) (punctuation modified).  The decision whether to grant a motion for severance is within the trial judge's discretion, and an "alleged abuse of [that] discretion, without more, is not a constitutional violation."  Id. at 459.  A separate trial is not required simply because defendants present antagonistic defenses.  Id. at 458.

16

Antagonistic defenses exist "when one person's claim of innocence is predicated solely on the guilt of a co-defendant." United States v. Harris, 9 F.3d 493, 501 (6th Cir. 1993). "The mere fact that each defendant points the finger at another is insufficient [to require severance]; the defendant must show that the antagonism confused the jury." United States v. Horton, 847 F.2d 313, 317 (6th Cir. 1988). Under Michigan law, severance is mandated only when a defendant "clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice." People v. Hana, 524 N.W.2d 682, 690 (Mich. 1994). This is a "very heavy burden." Stanford, 266 F.3d at 459.

Petitioner fails to satisfy this burden. Although Petitioner's attorney did not file a motion to sever, counsel for co-defendant Kennard did. The motion was denied by the trial court. The Michigan Court of Appeals found that the trial court did not abuse its discretion because Kennard's defenses and Petitioner's defenses were not mutually exclusive, and the jury was not required to believe one defendant at the expense of the other. Benford, 2015 WL 6438144 at *11. The court noted that both defendants argued that Stitts was the real perpetrator. Id. Given the decision of the trial court and the Michigan Court of Appeals on Kennard's motion to sever, it is unlikely that a motion to sever filed by Petitioner would have been likely to succeed. The Michigan Court of Appeals' determination that trial counsel's failure to move for a severance or separate jury trial did not constitute ineffective assistance was not contrary to or an unreasonable application of Strickland.

17

### 3. Pre-Arrest Silence

In his third claim for relief, Petitioner contends that he was denied a fair trial due to the admission of testimony of his silence in response to Investigator Don Olsen's request that he give a statement.

The prosecution may use a defendant's pre-arrest silence as substantive evidence of guilt as long as the defendant "did not expressly invoke the privilege against self-incrimination." Salinas v. Texas, 570 U.S. 178, 181 (2013) (plurality opinion) (emphasis added); see also Abby v. Howe, 742 F.3d 221, 228 (6th Cir. 2014) (defense counsel was not ineffective in failing to object to use of defendant's pre-arrest silence where defendant did not expressly invoke his right to remain silent). A defendant "does not invoke the privilege by remaining silent." Salinas, 570 U.S. at 186.

The trial court denied on collateral review Petitioner's claim regarding the admission of testimony about his pre-arrest silence because Petitioner was not in custody at the time he declined to speak. Benford, No. 13-001867, at PageID.3457–3458. Additionally, there is no evidence in the record that Petitioner expressly invoked his Fifth Amendment privilege. Accordingly, Petitioner has not shown that the state court's decision was contrary to or an unreasonable application of clearly established federal law. Further, admission of the testimony about Petitioner's pre-arrest silence in this case would have been harmless error, in light of its limited nature and the other evidence against Petitioner. See United States v. Banks, 29 F. App'x 276, 284 (6th Cir. 2002).

### 4. Self-Defense Instruction

In his fourth claim for relief, Petitioner contends that he was denied his right to a fair trial when the trial court refused a request for a self-defense jury instruction.

Obtaining federal habeas relief for a jury instruction claim is "a difficult hill to climb." Keahey v. Marquis, 978 F.3d 474, 478 (6th Cir. 2020). To show that a jury instruction violates due process, a habeas petitioner must demonstrate "both that the instruction was ambiguous and that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." Waddington v. Sarausad, 555 U.S. 179, 190–91 (2009) (punctuation modified). A federal court may not grant the writ of habeas corpus on the ground that a jury instruction was incorrect under state law; instead, the relevant inquiry is "whether the ailing instruction so infected the entire trial that the resulting conviction violates due process." Estelle v. McGuire, 502 U.S. 62, 71–72 (1991) (punctuation modified). The jury instruction "must be considered in the context of the instructions as a whole and the trial record." Id. at 72. The burden of proving that omission of a jury instruction violated due process is even heavier than that imposed on an incorrect instruction claim because "an omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977).

The Michigan Court of Appeals upheld the trial court's decision that a self-defense instruction was not supported by the evidence:

The record discloses that the trial court inquired regarding the evidence of justification, excuse, or self-defense that was submitted by the parties. Counsel argued that self-defense was available because Pokladek heard a scuffle and went outside.  The defense asserted that it was possible that the victim was the aggressor, but that the gun was taken from the victim.  The evidence that the victim carried a knife was also posited as a basis for a self-defense instruction.  The trial court held that there was insufficient evidence on the record to support a claim of deadly force in self-defense, but indicated that it would reconsider that decision if the defense could show actions in lawful self-defense.

The trial court did not err by failing to submit the issue of justification or excuse to the jury.  To justify that instruction, that theory of defense must be supported by evidence.  McGhee, 268 Mich.App at 606. The defense argument for a plausible justification or excuse was based on the theory that Pokladek may have heard the victim firing the weapon as the aggressor, but when he went outside, he only witnessed defendants recovering the weapon from the victim.  This was not a reasonable inference from the evidence.  More significantly, if defendants and Stitts had recovered the weapon from the victim, they would not be entitled to use deadly force at that time.  See Dupree, 486 Mich. at 709-710; MCL 780.972.  Defendant Benford argues that his hospital statement to the police regarding wrestling with the victim for the gun provided evidence of justification or excuse. However, he merely stated that the victim pulled a gun on him, they wrestled, defendant Benford was shot, and he sought help from his girlfriend. Defendant Benford never asserted that he shot the victim in self-defense.

Furthermore, Stitts's testimony indicated that the victim took off running and was pursued by defendant Kennard, who grabbed the victim, choked him, and knocked his head against the pavement, rendering him unconscious.  According to Stitts, Kennard then obtained a .22 rifle and shot the victim three times.  The evidence did not support the existence of any possible excuse or justification for the killing to require the instruction in paragraph (4) of M. Crim JI 16.5.  Accordingly, the trial court did not err by failing to give that instruction.

Benford, 2015 WL 6438144, at *6–*7.

The Michigan Court of Appeals' holding that the evidence did not warrant a self-

defense instruction under Michigan's self-defense rule is binding on habeas review,

Bradshaw v. Richey, 546 U.S. 74, 76 (2005), because state courts are the "ultimate expositors of state law." Mullaney v. Wilbur, 421 U.S. 684, 691 (1975). "[D]ue process does not require that a defendant be permitted to present any defense he chooses. Rather, states are allowed to define the elements of, and defenses to, state crimes." Lakin v. Stine, 80 F. App'x 368, 373 (6th Cir. 2003); see also Taylor v. Withrow, 288 F.3d 846, 853 (6th Cir. 2002) ("[S]tates have great latitude in criminal proceedings, including latitude to formulate both the elements of crimes and the defenses to them.").

No clearly established law indicates that failing to give a self-defense instruction when a state court has held the instruction unwarranted under state law violates the federal constitution. See Porter v. Eppinger, No. 19-3443, 2021 WL 3828113, at *6 (6th Cir. Aug. 27, 2021) ("[T]he Supreme Court has never established a federal standard by which to test a state court's decision on whether to give a self-defense instruction."). Absent clearly established federal law requiring a self-defense instruction under these circumstances, the state court's decision is not contrary to or an unreasonable application of federal law.

### 5. Sentencing Claims

In his fifth claim, Petitioner challenges his sentence. First, he argues that the state trial court incorrectly scored his sentencing guidelines under the Michigan Sentencing Guidelines. This claim is a state-law claim and not cognizable on federal habeas review. See Tironi v. Birkett, 252 F. App'x 724, 725 (6th Cir. 2007); Howard v. White, 76 F. App'x 52, 53 (6th Cir. 2003). Errors in the application of state sentencing guidelines

21

cannot independently support habeas relief.  See Kissner v. Palmer, 826 F. 3d 898, 904

(6th Cir. 2016).

Second, Petitioner argues that his sentence violates the Sixth Amendment jury trial

guarantee because, to enhance Petitioner's sentence by increasing the sentencing

guideline range, the sentencing judge used facts not admitted by Petitioner or found by a

jury beyond a reasonable doubt.  The Sixth Amendment's guarantee of a trial by jury

means that "[a]ny fact that, by law, increases the penalty for a crime . . . must be

submitted to the jury and found beyond a reasonable doubt." Alleyne v. United States,

570 U.S. 99, 103 (2013).  In Robinson v. Woods, 901 F.3d 710 (6th Cir. 2018), the

United States Court of Appeals for the Sixth Circuit granted habeas relief to a petitioner

whose mandatory minimum sentence was increased based upon judge-found facts and

who was sentenced after Alleyne was decided.  Id. at 714–15.  The Sixth Circuit held that

"Alleyne clearly established the unconstitutionality of Michigan's mandatory sentencing

regime." Id. at 714.

Petitioner was sentenced approximately five months after Alleyne was decided.

Therefore, Alleyne was clearly established law before Petitioner's convictions and

sentences became final.  In 2015, well after Petitioner's sentencing, the Michigan

Supreme Court held that Michigan's sentencing guidelines scheme, which allowed

juridical fact-finding to increase the floor of the sentencing guidelines range, violated the

Sixth Amendment.  People v. Lockridge, 870 N.W.2d 502 (Mich. 2015).  To correct this

violation, the Michigan Supreme Court rendered the guidelines advisory.  Id. at 520–521.

22

It determined that the remedy for a defendant who had been sentenced under the mandatory sentencing guidelines was to "remand[] to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error." Id. at 523.  Termed a Crosby hearing after United States v. Crosby, 397 F.3d 103 (2nd Cir. 2005), this remedy requires a trial court to conduct a new sentencing hearing only if it finds that it would have imposed a materially different sentence had the guidelines been advisory and not mandatory.  Id.

Petitioner did not raise a Sixth Amendment challenge to his sentence on direct review, but he received a Crosby hearing when he filed a motion for resentencing in the trial court.  The trial judge held that he would have imposed the same sentence had the guidelines been advisory and not mandatory.  6/1/17 Mot. Tr. at PageID.3510.  Petitioner thus received the remedy prescribed in Lockridge.

Petitioner appears to argue that the Court should nevertheless grant relief because he was entitled to a full resentencing hearing.  In Reign v. Gidley, 929 F.3d 777 (6th Cir. 2019), the Sixth Circuit denied a habeas petitioner's claim that he was entitled to a full resentencing hearing following Lockridge, rather than to the trial judge's determination that the trial judge would have imposed the same sentence even if the guidelines had been advisory at the time of sentencing.  Id. at 780.  The Sixth Circuit held that, because the Supreme Court has not established what type of remedy is required for cases in which a mandatory sentencing guidelines regime was invalidated and made advisory, the state court's approach could not be contrary to, or an unreasonable application of, clearly

23

established federal law. Id. at 781-82; see also Morrell v. Wardens, 12 F.4th 626, 632 (6th Cir. 2021) ("The United States Supreme Court has not clearly established whether a defendant sentenced under an unconstitutional sentencing scheme is entitled to a full resentencing or only a Crosby hearing.").  Petitioner, therefore, is not entitled to relief on this claim.

### 6. Ineffective Assistance of Appellate Counsel

Finally, Petitioner argues that appellate counsel was ineffective in failing to raise on direct review the claims raised in the pending habeas petition.

The Sixth Amendment guarantees a defendant the right to effective assistance of counsel on the first appeal as of right.  See Evitts v. Lucey, 469 U.S. 387, 396–397 (1985).  But a defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.  Jones v. Barnes, 463 U.S. 745, 754 (1983). The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

Id. at 754.  Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel."  United States v. Perry, 908 F.2d 56, 59 (6th Cir. 1990).

Further, counsel is not ineffective for failing to raise a meritless claim on direct review.  Bennett v. Brewer, 940 F.3d 279, 286 (6th Cir. 2019).  Because the Court has

24

determined that the claims not raised on direct appeal lack merit, appellate counsel was not ineffective for failing to include them on direct review.

## B. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253.  Fed. R. App. P. 22. Rule 11 of the Rules Governing Section 2254 Proceedings requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  R. Governing § 2254 Proceedings 11.  A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).

In this case, reasonable jurists would not debate the Court's conclusion that none of the claims in the habeas petition warrant relief.  Therefore, the Court denies a certificate of appealability.

## C. Leave to Proceed In Forma Pauperis on Appeal

The standard for granting an application for leave to proceed in forma pauperis (IFP) has a lower threshold than the standard for certificates of appealability.  Foster v. Ludwick, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002).  While a certificate of appealability may be granted only if a petitioner makes a substantial showing of the denial of a constitutional

25

right, a court may grant IFP status if it finds that an appeal can be taken in good faith.  Id. at 764–765; 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(2).  "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits.  Foster, 208 F. Supp. 2d at 765.  The Court finds that an appeal could be taken in good faith.  Therefore, Petitioner may proceed in forma pauperis on appeal.

### IV. CONCLUSION

For the reasons set forth above, the Court denies the petition for writ of habeas corpus, declines to issue a certificate of appealability, and grants leave to proceed in forma pauperis on appeal.


SO ORDERED.


Dated: January 6, 2022           s/Mark A. Goldsmith
      Detroit, Michigan          MARK A. GOLDSMITH
                           United States District Judge

### **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 6, 2022.

                          s/Karri Sandusky
                          KARRI SANDUSKY
                          Case Manager